CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
for Charlottesville
AUG 31 2005
JOHN F. CORCORAN, CLERK
BY: Fay Coleman
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> CURTIS DELMONT WOOLFOLK, <br><br> *Defendant.* | CRIMINAL CASE NO. 3:03-CR-00079 <br><br> MEMORANDUM OPINION <br><br> JUDGE NORMAN K. MOON |

This matter comes before the Court on a Mandate from the United States Court of Appeals for the Fourth Circuit. On March 2, 2005, the Fourth Circuit issued an opinion remanding to this Court for further consideration of Defendant's Speedy Trial Act and Sixth Amendment claims. *See United States v. Woolfolk*, 399 F.3d 590 (2005). In accordance with the Fourth Circuit Mandate, this Court conducted evidentiary hearings on May 9 and May 12, 2005. For the reasons stated below, the Court DENIES Defendant's Speedy Trial Act and Sixth Amendment claims.

## I. FACTS

On December 15, 2002, in Charlottesville, Virginia, state police officers arrested Curtis Delmont Woolfolk for driving under the influence. The officers searched Woolfolk's vehicle pursuant to the arrest. During the search, the officers found eight grams of crack cocaine in the center console of the vehicle. The officers took Woolfolk into custody, and the state of Virginia subsequently charged him with four violations following his arrest—possession of cocaine,

driving under the influence, refusal of a blood breath test, and driving on a suspended operator's license.

On December 18, 2002, the United States Government ("the Government") filed a criminal complaint against Woolfolk in the United States District Court for the Western District of Virginia, alleging that Woolfolk knowingly possessed five grams or more of crack cocaine with the intent to distribute. The Government issued an arrest warrant for Woolfolk on the same date. At that time, Woolfolk already was in state custody at the Albemarle/Charlottesville Regional Jail ("the jail") for the four state charges stemming from his December 15 arrest. On January 9, 2003, the Government issued a federal detainer to the state authorities, stating that a federal arrest warrant had been issued for Woolfolk and requesting that the state authorities notify the Government prior to Woolfolk's release from state custody.

On February 20, 2003, Woolfolk's state charge of possession of cocaine was nolle prossed in Charlottesville General District Court ("the court"). The court notified the jail of the disposition of this charge by fax, pursuant to the usual procedures. Amy Gray, records supervisor for the jail, testified that when an inmate appears in court, the court will generate a "disposition notice" to notify the jail of the resolution of any charges. (Tr. Evidentiary Hr'g 24, May 9, 2005 ). The court will then fax this notice to the jail or a deputy will deliver the notice to the jail when he or she returns with the inmate.[1] *Id.* at 24–25. This notice is then placed in the jail's file on the inmate. *Id.* Gray also testified that the court never informs the jail orally of the disposition of an inmate's charges—the jail must have a disposition notice from the court in

---

[1] Gray testified that in the past, a deputy would drop off the paperwork with the jail when he or she returned from court. The current procedure is that the paperwork is always faxed to the jail from the court. *Id.* at 25–26. Gray was not certain what procedure was in place when Woolfolk was an inmate. *Id.*

2

order to release an inmate. *Id.* at 25.

On April 10, 2003, Woolfolk returned to the court on his remaining three charges. Woolfolk was found guilty and given a suspended sentence of ten days for the driving on a suspended operator's license charge, and the remaining two charges were nolle prossed. However, Gray testified that the jail did not receive a disposition notice from the court on April 10. *Id.* at 13. The jail *did* receive a disposition notice for Woolfolk's remaining three state charges on December 1, 2004. *Id.* at 15. This notice stated that it was for the court date of April 10, 2003.[2] *Id.* Gray testified that this was the first and only time that the jail received a notice from the court regarding the disposition of Woolfolk's three remaining charges. *Id.* Woolfolk's inmate file, maintained by the jail, contains a disposition notice from the court received on February 20, 2003, and on December 1, 2004, but the file does not contain a disposition notice received on April 10, 2003. *Id.* at 12–15. Shelby Mayo, clerk of the court, testified that the court also retains copies of the disposition notices. (Tr. Evidentiary Hr'g 10–12, May 12, 2005). Mayo testified that the court's file on Woolfolk contained a disposition notice for February 20, 2003, and for December 1, 2004, but not for April 10, 2003. *Id.*

Although Woolfolk had no state charges pending against him after April 10, 2003, he was not released by state authorities at that time. In fact, Woolfolk remained in state custody at the jail until July 10, 2003. During that time, the jail continued to bill the City of Charlottesville for Woolfolk's incarceration. On July 10, 2003, the United States Marshalls notified the jail that it would be taking Woolfolk into federal custody, and Woolfolk had his initial appearance before a federal magistrate judge. Also on that date, the jail began billing the Government, not the City

---

[2] The December 1, 2004 disposition notice was most likely sent in response to an inquiry from the United States Marshalls after it took Woolfolk into federal custody. *Id.* at 16.

3

of Charlottesville, for Woolfolk's incarceration. On April 30, 2004, Woolfolk left the jail on a Bureau of Prisons airlift to be placed in a federal facility. As stated earlier, on December 1, 2004, the court sent a notice to the jail *for the first time* informing the jail that Woolfolk's remaining state charges had been either suspended or nolle prossed.

As stated above, Woolfolk first appeared before United States Magistrate Judge B. Waugh Crigler on July 10, 2003. The Government indicted Woolfolk on the federal charge of possession with the intent to distribute on August 7, 2003. On August 22, 2003, Woolfolk filed a motion to dismiss the indictment, arguing that the delay between the filing of the complaint and the arrest warrant on January 9, 2003, and the filing of the indictment on August 7, 2003, violated the Speedy Trial Act and Woolfolk's Sixth Amendment right to a speedy trial. On October 2, 2003, this Court entered an order denying Woolfolk's motion to dismiss. Woolfolk plead guilty to the federal charges on December 19, 2003.[3] The Court sentenced Woolfolk on February 25, 2004. Woolfolk then filed an appeal with the Fourth Circuit Court of Appeals, arguing that his prosecution violated both the Speedy Trial Act and his Sixth Amendment right to a speedy trial. After oral arguments, the Court of Appeals remanded to this Court, with instructions, for further consideration of Woolfolk's claims.

## II. REASONING

### A. Defendant's Speedy Trial Act Claim

Woolfolk first argues that the delay between his arrest and the filing of the federal indictment violated the Speedy Trial Act, 18 U.S.C. § 3161. The Speedy Trial Act provides, in

---

[3]When he plead guilty, Woolfolk reserved the right to challenge his prosecution as violating the Speedy Trial Act and his Sixth Amendment right to a speedy trial on appeal.

4

relevant part: "Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges." 18 U.S.C. § 3161(b) (2000). Woolfolk argues that this thirty-day time limit began running either on January 9, 2003, the day the Government issued a detainer against him, or on April 10, 2003, the day that all of his state charges were dismissed. The Government, on the other hand, argues that this time period began running on July 10, the date that the United States Marshalls notified the jail that it was taking Woolfolk into federal custody and the date that Woolfolk first appeared before a federal magistrate judge.

In its March 2, 2005 Opinion remanding Woolfolk's appeal to this Court, the Fourth Circuit Court of Appeals stated that Woolfolk's argument that the speedy trial time period began to run on January 9 is foreclosed by its holding in *United States v. Thomas*, 55 F.3d 144, 148 (4th Cir. 1995). *See United States v. Woolfolk*, 399 F.3d 590, 595 (4th Cir. 2005). However, the Court of Appeals stated that it is possible that the time period began to run on April 10, as Woolfolk argues. *See id.* at 596–97. The Court of Appeals stated that the period began to run on April 10 *if* Woolfolk was being held after that date by state authorities "only to answer to federal charges," *and* the Government "knew or should have known" that Woolfolk was being so held. *See id.* Therefore, on remand, this Court must determine: (1) whether Woolfolk was being held by state authorities because of the federal detainer or because, as the Government argues, the state failed to process the termination of Woolfolk's state charges; and (2) if the state was in fact holding Woolfolk because of the federal detainer, whether the Government "knew or should have known" of this fact. *Id.* at 597.

5

As a preliminary matter, the Court must determine whether the Government or the defendant carries the burden on this issue. The Speedy Trial Act does not specify who carries the burden for violations of the thirty-day requirement for filing an indictment under 18 U.S.C. § 3161(b). *See* 18 U.S.C. § 3162(a)(2) (2000) (stating that the defendant has the burden of proof for proving a violation of § 3161(c) but giving no such indication for § 3161(b)). Nor do the cases the Government submits resolve the issue.[4] The Court finds, however, that it makes the most sense to place the burden initially on the defendant to make *prima facie* showing that the indictment was filed after the thirty-day time period. Once the defendant has made this *prima facie* showing of a Speedy Trial Act violation, the Government has the burden of rebutting this *prima facie* showing and proving that no violation occurred. This is the most logical conclusion because a defendant should not be put in the position of trying to prove what the Government knew or did not know during the relevant time period. Because Woolfolk has made a *prima facie* showing here, the burden is on the Government to show that no Speedy Trial Act violation occurred.

Regardless of where the Court places the burden, there is simply no evidence to support Woolfolk's contention that a Speedy Trial Act violation occurred here. Based on the evidence, the Court finds that Woolfolk remained in state custody after April 10 because either the jail or the court made a clerical error in processing the termination of Woolfolk's state charges, not

---

[4]The Government argues that the burden falls on the defendant to prove a Speedy Trial Act violation, and submits the cases of *United States v. Pinto-Roman*, 337 F. Supp. 2d 781, 785 (E.D. Va. 2004) (stating that the burden is on a defendant to prove the "ruse" exception—that a civil detention constituted an arrest in connection with a criminal charge for purposes of 18 U.S.C. § 3161(b)), and *United States v. Ketron*, No. 1:01cr00058, 2003 WL 21304929, at *2 (W.D. Va. June 4, 2003) (finding that the Defendant has the burden of proof for a violation of § 3161(j) of the Speedy Trial Act even though this is not explicitly stated in the Act). The Court, however, finds that neither of these cases are on point for the issue of who carries the burden in this case.

6

because of the federal detainer. Both Amy Gray, the records supervisor for the jail, and Shelby Mayo, the clerk of the court, testified that when an inmate's charges are disposed of in court, the court notifies the jail either by fax or by sending a disposition notice with a deputy returning to the jail. Both Gray and Mayo testified that this information is *never* conveyed orally to the jail. In fact, Gray testified that the jail cannot release an inmate without a written disposition notice of the charges. Both the jail and the court keep a file on each inmate, and any disposition notice would be placed in the file. Even though Woolfolk's three remaining charges were disposed of in court on April 10, no disposition notice for this date was found in either the jail's or the court's records. However, both the jail and the court had disposition notices on file for Woolfolk for February 20, 2003, and December 1, 2004. In fact, if the jail had been properly notified on April 10 of the disposition of Woolfolk's charges, there would have been no need to send additional notification of this information on December 1, 2004. Therefore, the Court concludes that for whatever reason, the jail was never notified of the disposition of Woolfolk's charges on April 10, 2003. Thus, Woolfolk was not held by state authorities after April 10 in order to answer the federal detainer, but instead because the jail was not aware that his state charges had been dismissed.

Even if the Court were to find that the jail *was* holding Woolfolk solely to answer to federal charges after April 10, the Court still would have to find that the Government knew or should have known of this fact in order to find a Speedy Trial Act violation. Again, there is simply no evidence that the Government knew or should have known that all of Woolfolk's state charges were dismissed on April 10. Gray testified that when the jail receives notice that an inmate no longer has any pending state charges, it is then responsible for notifying the United

7

States Marshalls if the Government has issued a detainer on that inmate. (Tr. Evidentiary Hr'g 11, May 9, 2005). Once the jail has notified the Marshalls, the jail will then begin billing the Government for the inmate's custody and the inmate is considered a federal inmate. *Id.* In addition, Detective D. J. Harris, the Charlottesville police officer assigned to Woolfolk's case, testified that he was not responsible for notifying the federal agent assigned to the case about the disposition of Woolfolk's charges. (Tr. Evidentiary Hr'g 15, May 12, 2004). Harris also testified that he was not in court with Woolfolk on April 10 and was not notified in any other way of the disposition of Woolfolk's charges. *Id.* at 17. Therefore, the Court finds that the Government had no way of learning that Woolfolk's state charges had been dropped. The Government does not need to actively check on the status of a state inmate's charges because the jail normally notifies them when the state charges have been dismissed. The jail failed to notify the Government in this case because it was not aware that all of Woolfolk's state charges had been dismissed. In addition, Detective D. J. Harris, the state police officer assigned to Woolfolk's case, testified that he did not notify any Government agent that Woolfolk's charges had been dropped (and in fact, he was not aware of this information himself).

Defendant alleges that the Government knew of the disposition of his state charges because he filed a habeas petition with this Court sometime in April or May of 2003, after his state charges were dismissed. (Tr. Evidentiary Hr'g 29, May 9, 2005). However, the Court does not have any record of such a petition being filed. Defendant cannot remember the date he filed the petition and does not have any record of the petition. The Court cannot take judicial notice of the habeas petition without any proof of its filing. Accordingly, the Court finds that the Government did not know, nor should it have known, of the disposition of Woolfolk's state

8

charges before July 10, 2003.

Based on this evidence, the Court finds that the jail was not holding Woolfolk after April 10, 2003, solely for the purposes of answering to federal charges. Even if it were, the Government did not know or should not have known that Woolfolk was no longer being held on state charges. Accordingly, the Court finds that the thirty-day time period did not begin to run until July 10, 2004, the date that Woolfolk first appeared before a federal magistrate judge and the date that the Government began paying for Woolfolk's incarceration. Woolfolk was indicted on August 7, 2003, which was within thirty days of July 10, 2004. Therefore, no violation of the Speedy Trial Act occurred here. *See* 18 U.S.C. § 3161(b) (2000). The Court therefore denies Woolfolk's Speedy Trial Act claim.

## B. Defendant's Sixth Amendment Speedy Trial Claim

The Court must next turn to Woolfolk's claim that the delay following the issuance of the federal detainer on January 9, 2003, violated his Sixth Amendment right to a speedy trial. The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. In the Fourth Circuit's March 2 Opinion remanding Woolfolk's appeal to this Court, the Court found that the postaccusation delay in Woolfolk's case was long enough to be presumptively prejudicial and to trigger the Sixth Amendment analysis first outlined in the case of *Barker v. Wingo*, 407 U.S. 514 (1972). *See United States v. Woolfolk*, 399 F.3d 590, 597–98 (4th Cir. 2005). The Court of Appeals remanded to this Court and instructed the Court to undertake a *Barker* analysis. *Id.* The *Barker* test requires the Court to make four separate inquiries: (1) whether the delay before trial was

9

uncommonly long; (2) whether the government or the criminal defendant is more to blame for the delay; (3) whether, in due course, the defendant asserted his right to a speedy trial; and (4) whether he suffered prejudice as a result of the delay. *See id.* (quoting *Doggett v. United States*, 505 U.S. 647, 651 (1992)). If Woolfolk can show that these four inquiries weigh in his favor, a violation of Woolfolk's Sixth Amendment Speedy Trial rights occurred and the Court must dismiss the charges against Woolfolk.

Although the delay in this case is sufficient to meet the threshold necessary to trigger a Sixth Amendment analysis, the Court also must evaluate the amount of delay as one of the four factors to weigh on balance. The Court must consider "the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *See Doggett*, 505 U.S. at 651 (stating that the presumption that pretrial delay has prejudiced the accused intensifies over time). Here, the Court of Appeals stated that it is unclear whether the period of postaccusation delay in this case was either eight months or one year.[5] *See Woolfolk*, 399 F.3d at 598. However, even assuming that the delay was approximately one year, the longer of the two periods, the Court finds that this first factor does not weigh in favor of Defendant. A postaccusation delay of one year is just long enough to trigger a Sixth Amendment Speedy Trial analysis. *See Doggett*, 505 U.S. at 652 n.1 ("postaccusation delay [is] 'presumptively prejudicial' at least as it approaches one year"); 4 Wayne R. LaFave, Jerold H. Israel, & Nancy J. King, Criminal Procedure § 18.2(b) (2d ed. 1999) ("it may generally be said that any delay of

---

[5] The Court of Appeals was unsure whether to count the period of "postaccusation delay" as the period from the serving of the detainer, arrest warrant, and complaint on January 9 to the filing of the indictment on August 7 (approximately eight months), or as the time from January 9 until December 19, the date that Woolfolk plead guilty to the charges (approximately one year). *See Woolfolk*, 399 F.3d at 598. For the sake of argument, the Court will consider the longer period of one year as the relevant time period.

Case 3:03-cr-00079-NKM   Document 52   Filed 08/31/05   Page 10 of 15   Pageid#: 103

eight months or longer is presumptively prejudicial"). The Fourth Circuit has found no Sixth Amendment violation in cases involving much longer delays. *See, e.g., United States v. Hopkins*, 310 F.3d 145 (4th Cir. 2002) (finding no Sixth Amendment violation for a two year delay); *United States v. Thomas*, 55 F.3d 144 (4th Cir. 1995) (finding no Sixth Amendment Speedy Trial violation for a three-and-a-half year delay). Given the fact that much of this delay occurred while Woolfolk was in state prison awaiting disposition of his state charges and the delay is no longer than the minimum needed to trigger judicial examination of the claim, the Court finds that this first factor does not weigh in favor of Woolfolk.

The Court next must consider the reason for the delay. The Government filed a detainer, a warrant, and a complaint against Woolfolk on January 9, 2003, triggering his Speedy Trial rights. Woolfolk was indicted on these charges on August 7, 2003, almost eight months after his Speedy Trial rights attached, and plead guilty to these charges on December 19, 2003, almost a full year after his Speedy Trial rights attached. However, as discussed above, the Government did not learn that state charges were no longer pending against Woolfolk and did not take Woolfolk into federal custody until July 10, 2003. The Government indicted Woolfolk less than one month after he was taken into federal custody and Woolfolk plead guilty just a few months after his federal indictment. Therefore, the long delay in this case occurred mostly when Woolfolk was in state custody. Because the Court has already concluded that the Government did not know and should not have known that Woolfolk was being erroneously held in state custody from April 10 until July 10, 2003, the Court finds that the delay is not the fault of the Government. There is no reason for the Court to conclude that the delay was the fault of the defendant. Accordingly, this second factor does not weigh in favor of the Government or in

favor of Woolfolk.

The Court must next consider whether, in due course, the defendant asserted his Speedy Trial rights. Woolfolk learned that his state charges were dismissed April 10, 2003. Woolfolk claims that he filed a habeas petition with this Court regarding his Speedy Trial rights in either April or May of 2003. However, as stated earlier, the Court does not have any proof that this petition was filed. Even so, Woolfolk did file a motion to dismiss the indictment based on Speedy Trial grounds on August 22, 2003. Woolfolk filed this motion less than a month after the filing of the federal indictment. Accordingly, the Court finds that Woolfolk timely asserted his Speedy Trial rights, and this factor weighs in favor of Woolfolk.

The final factor the Court must consider is whether Woolfolk suffered any prejudice as a result of the delay. Woolfolk argues that he was prejudiced because his father, a potential defense witness, died before Woolfolk was brought to trial. Pretrial delay can cause several types of harm to a defendant, including "oppressive pretrial incarceration," "anxiety and concern of the accused," and "'the possibility that the [accused's] defense will be impaired' by dimming memories and loss of exculpatory evidence." *Doggett v. United States*, 505 U.S. 647, 654 (1992) (citing *Barker v. Wingo*, 407 U.S. 514, 532 (1972)). The impairment of the defense is the most serious of these three harms. *Id.* In fact, if the government has pursued a defendant with reasonable diligence, a defendant's Sixth Amendment Speedy Trial claim is precluded *unless* the defendant can show specific prejudice to his or her defense. *See United States v. Thomas*, 55 F.3d 144, 150 (4th Cir. 1995) (stating that a showing of reasonable diligence by the government "would altogether preclude a Sixth Amendment speedy-trial claim absent a showing of specific prejudice to [the defendant's] defense.") (citing *Doggett v. United States*, 505 U.S. 647, 656

12

(1992)).

When the state police officers arrested Woolfolk on December 15, 2002, the officers found eight grams of crack cocaine in the car and $900 in Woolfolk's pocket. At the evidentiary hearings on this motion, Woolfolk testified that his father gave him the $900 as a Christmas present. Woolfolk also stated that his father was going to testify at trial. However, Woolfolk's father was killed September 11, 2003, in an automobile accident. Therefore, Woolfolk argues that the delay in trial prejudiced his defense because it caused him to lose his father as a material witness.

The Court, however, did not find Woolfolk's testimony regarding the money to be believable. Woolfolk also testified at the hearing that he paid about $300 for nine grams of crack cocaine, even though the street value for this amount of cocaine base is approximately $900. (Tr. Evidentiary Hr'g 24, May 12, 2005). In addition, Woolfolk testified that his father gave him $1,000 as a Christmas present, but Woolfolk was found with the money on December 15, ten days before Christmas. *Id.* at 22. An amount of $1,000 is much higher than the usual Christmas present, and the Court finds it hard to believe that a father would give his crack-addict son such a large amount of cash. The Court finds it doubtful that a jury would believe the father, even if the father testified, especially given the obvious bias of the father as a witness. In addition, it is not certain that Woolfolk's trial would have occurred before his father's death.[6]

---

[6] The earliest date that Woolfolk could have been indicted on the federal charges was April 10, 2003, because Woolfolk was still facing state charges before that date. The period from when Woolfolk was first brought into federal custody on July 10, 2003, until the date that Woolfolk plead guilty on December 16, 2003, lasted approximately four months. If Woolfolk was first brought into federal custody on April 10 instead of July 10, four months from that date would have been August 10, 2003. This would put Woolfolk's trial very close to his father's death, and would not allow for any delays due to motions made by the defendant or the Government, discovery issues, etc.

13

Finally, even if Woolfolk's father testified and the jury believed his testimony, the Court is not convinced that the testimony would have changed the outcome of the case. The intent to distribute can be inferred from a number of factors. One of these factors is the amount of cash seized with the drugs. *See United States v. Bell*, 954 F.2d 232, 235 (4th Cir. 1992); *United States v. Fisher*, 912 F.2d 728, 730 (4th Cir. 1990). Another factor is the amount of drugs found. *See id.* Woolfolk was found with nine grams of cocaine base. This is a very large amount of crack cocaine—clearly more than a mere user's amount. In addition, there was evidence that while the police officers were executing the arrest, a woman approached the vehicle and Woolfolk said to her, "[i]t's between the seats." (Tr. Guilty Plea Hr'g 10, Dec. 19, 2002). This statement shows that Woolfolk could have been acting in concert with another person, which also is evidence of the intent to distribute. Therefore, because the Court does not find Woolfolk's story to be believable and because the Court does not find that the father's testimony, if there had been such testimony, would have had any affect on the outcome of his case, the Court finds that Woolfolk was not prejudiced by the delay in bringing him to trial. Accordingly, this final factor weighs in favor of the Government.

The Court has undertaken a Sixth Amendment Speedy Trial analysis, and the Court finds that the only factor that weighs in favor of Woolfolk is the fact that he asserted his Speedy Trial rights in due course. However, because the delay before trial was not uncommonly long, that the delay was not the fault of the Government, and that Woolfolk was not prejudiced by the delay, the Court finds that the four-part balancing test weighs in favor of the Government. Accordingly, the Court finds that Woolfolk's Sixth Amendment Speedy Trial rights were not violated in this case.

For the reasons stated above, the Court finds that no Speedy Trial Act violation occurred and Woolfolk's Sixth Amendment Speedy Trial rights were not violated. The Court DENIES Woolfolk's motion to dismiss on remand from the Fourth Circuit.

An appropriate Order shall issue. The Clerk of the Court is directed to send a certified copy of this Memorandum Opinion to all counsel of record.

ENTERED: *[signature]*
U.S. District Judge

8-31-05
Date